J-A19040-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MELINDA E. KERRY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH E. KERRY: | : | No. 3553 EDA 2019 |

Appeal from the Order Entered November 19, 2019
In the Court of Common Pleas of Delaware County Domestic Relations at
No(s):  No. 2013-001583

BEFORE:    PANELLA, P.J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                **FILED SEPTEMBER 3, 2020**

In this divorce action, Melinda E. Kerry (Wife) appeals from the equitable distribution order entered in the Delaware County Court of Common Pleas, dividing the marital property between her and Joseph E. Kerry[1] (Husband). Wife raises four issues for our review, all relating to the trial court's finding that Husband's post-separation deposits of money, into a joint bank account, were not a gift to Wife.  We affirm.

Wife and Husband were married on August 30, 1997, and have three children, born in 2001, 2002, and 2005.  On February 20, 2013, Wife filed a complaint in divorce.  The trial court found the date of separation was February 27, 2013, when the complaint was served on Husband.  Amended Final

_____

[1] Husband, an attorney, was represented by counsel in the proceedings below. In this appeal, he proceeds *pro se*.

- 1 -

Equitable Distribution Order, 11/19/19 (ED Order), at 5, 7. The trial court conducted an equitable distribution trial over November 6, 2017, and February 14, April 24, May 14, and November 26, 2018. *Id.* at 4. On November 19, 2019, the court issued the underlying 37-page amended equitable distribution order, and subsequently filed a 16-page opinion. As the trial court and parties are well familiar with the litigation in this matter, we do not reproduce all the underlying facts and procedural history, but rather focus our review on the following.

"A major issue presented in this matter concerned Wife's claim to" Husband's post-separation deposits into a TD Bank account (TD Account), which was jointly owned by the parties. Amended Final Equitable Distribution Order (ED Order), 11/19/19, at 12. By way of explanation, for 26 months following separation, through April 29, 2015,[2] Husband continued to deposit all of his paychecks[3] — and, after the termination of his employment, his severance-package payments — into the TD Account. These deposits totaled

---

[2] The trial court's opinion stated the deposits ended in **July** of 2015, citing Wife's testimony to this effect. Trial Ct. Op., 2/11/20, at 2 n.2, *citing* N.T., 4/24/18, at 96. While we agree that Wife testified in this manner on the cited page, we note both parties consistently testified, and their counsel argued, that the deposits spanned 26 months and ended in **April** of 2015. *See* N.T., 4/24/18, at 9, 16, 21 (Wife's testimony), 81, 103; N.T., 5/14/18, at 70 (Husband's testimony).

[3] *See* N.T., 5/14/18, at 69.

$863,836.[4]  N.T., 4/24/18, at 86.  Wife averred that at least one half of these deposits were a "gift" to her from Husband.

We further note that post-separation, $4,500 was transferred monthly from the TD Account to a joint Capital One account, ending in 7706 (7706 Account), and an additional $1,000 was transferred monthly from the TD Account to a second joint Capital One account, ending in 8295 (8295 Account). N.T., 5/14/18, at 188-89; ***see also*** Wife's Brief at 31-32.

During this 26-month post-separation period, Wife did not seek spousal or child support.  When asked at trial why she did not, Wife testified, "Because I thought we were working — I thought I was waiting for [Husband] to get himself back [sic] . . . [a]nd to be able to not lie."  N.T., 4/24/18, at 79.  Wife further testified to the following:  the children's and her expenses totaled $11,500 monthly.  ***Id.*** at 105.  She "had access" to and "the checkbook" for the TD Account, which she used to pay "all the bills," tithing, and taxes for not only herself and the children, but also Husband.  ***Id.*** at 84, 103.  It was Wife's "role" and "job" to pay the bills and "handl[e the parties'] books."  ***Id.*** at 86. Wife spent money from the account "as [she] saw fit," and Husband did not

---

[4] This Court previously affirmed a child support order, in an appeal taken by Wife.  ***M.E.K. v. J.E.K.***, 222 EDA 2019 (unpub. memo.) (Pa. Super. Nov. 13, 2019).  In that memorandum, the panel explained, "In 2013 and 2014, [Father] earned more than $500,000 per year.  He was terminated for cause in November 2014, and received a severance package that included payment of $750,000 over 18 months ($30,000 per month), which ended in May 2016." ***Id.*** at 2 n.3.

object to any of her spending. *Id.* at 105-06. Husband's net total expenses were $393,885,[5] less than half of the total deposits of $863,836. *Id.* at 83, 86. When asked whether she considered the payments for Husband's expenses to be "a gift," Wife responded "no." *Id.* at 84.

Finally, we note that at trial, Wife acknowledged "[Husband] didn't specifically say this is a gift," but nevertheless insisted "the intent was that we were sharing that money." *Id.* at 98.

Meanwhile, Husband testified to the following. Post-separation, he continued to deposit his pay into the joint TD Account because he "didn't want to complicate [Wife's and the children's] lives," "wanted to maintain the status quo," and "didn't want to disrupt an already complicated situation." N.T., 5/14/18, at 70, 201. While Husband stated another reason for depositing the money was that he loved Wife and the children, he denied the deposits were made in "an effort to woo [Wife] back." *Id.* at 70.

On April 29, 2015 — when the TD Account deposits ended — "Husband sought court intervention to initiate a child and spousal support action on behalf of Wife and against himself." Trial Ct. Op. at 2-3. Husband testified to the following at trial: through the TD Account deposits, Wife was "receiving support [from him] voluntarily prior to [his] filing for support." N.T., 5/14/18,

---

[5] Wife calculated Husband's total expenses, during the 26-month period, to be $513,154. N.T., 4/24/18, at 82. This amount included Husband's initial payment for $119,269 of business expenses, which was subsequently reimbursed. *Id.* at 82

at 201. When Husband anticipated his severance pay would end, he asked Wife to "work something out in terms of what [he could pay] that's reasonable." *Id.* at 74. Wife, however, insisted he continue to pay according to his prior salary of $500,000 a year. *Id.* Believing this was "not doable," Husband commenced the support action. *Id.* at 75.

Consequently, on October 20, 2015, the court issued a support order, directing Husband to pay $7,653.57 in monthly alimony *pendente lite* (APL) and $4,346.43 in monthly child support —a total of $12,000 monthly. Trial Ct. Op. at 3; N.T., 4/24/18, at 80.

As stated above, Wife testified, and argued, that at least one half of the post-separation deposits should be deemed a gift, from Husband.[6] N.T., 4/24/18, at 6, 8-9, 85, 98. In response, Husband's counsel also stated that a portion of the deposits "were a gift." *Id.* at 6. Relevant to Wife's argument on appeal, we specifically note counsel's statements to this effect at trial: "I do agree that they were a gift," *id.* at 6; "[W]e agree that, to some extent, they constituted a gift to [Wife]," *id.* at 9; "They were a gift to her," *id.* at 10; "They're a gift to [W]ife," *id.* at 11; "I agree that there was a gift," *id.* at 13; and ". . . I agree that in depositing post separation earnings into the account,

---

[6] At trial, Wife withdrew her claim that the post-separation deposits should be classified as marital property. N.T., 4/24/18, at 13. *See also* 23 Pa.C.S. § 3501(a) (defining "marital property" as "property acquired by either party **during** the marriage and the increase in value of any nonmarital property acquired").

those constituted a gift." ***Id.*** at 13-14.  However, we note, Husband's counsel

made these statements in the context of the following argument:

> . . . I agree that in depositing post separation earnings into the account, those constituted a gift.  That is, [Husband] is without a cause of action that would allow for him to call that back.  However, to the extent that [Wife] seeks to use that gift argument to create a deficit between what she was entitled to and what she received and then ask for this Court to remedy that deficit, we don't agree.

***Id.*** at 13-14.  Husband also argued the following:

> [Husband:  W]e're not seeking a dollar-for-dollar credit where [Husband's] gift to [Wife] will carry relevance down the road, will be when [Wife] asks for alimony [sic].
>
> THE COURT:  All right.
>
> [Husband:] Because we have 26 months from the date of separation to the date that [Husband] filed for support.  Where he was supporting [Wife] and the children far in excess of what his statutory obligation would have been and was under the statute. . . .

***Id.*** at 16.

On January 31, 2019, the parties submitted post-trial memoranda, and

on June 27, 2019, the court issued an equitable distribution order.  Wife filed

a petition for reconsideration on July 24, 2019, to which Husband filed an

answer.  The court granted reconsideration on September 27, 2019, and held

a hearing on November 7th.  On November 19, 2019, the court issued the

underlying amended final equitable distribution order.  Pertinently, the court

concluded no portion of Husband's post-separation deposits to the TD account

were a "gift" to Wife.  The court reasoned, in part:

As Husband was the sole source of income for the parties, it could be . . . inferred that the purpose of [his deposits] was to preserve the marital estate by paying expenses associated with ownership and its dissipation. Also, as Husband testified, he was the sole income source and felt the need to continue to support Wife and the Children[.] Husband's testimony is further supported by the fact that when he ceased depositing the funds into the joint account, he then "took himself to support court" to determine his legally binding support obligation to the Children and Wife.

ED Order at 14-15. The court also considered Wife's trial response, that "the payment of Husband's expenses [did not] constitute[ ] a gift of jointly held money back to him." *Id.* at 15. The court found this "logic must be applied consistently," against Wife. *Id.*

Finally, we note the court awarded Wife 70% of the marital estate, and to Husband, 30%. Trial Ct. Op. at 1. The court also denied Wife's request for alimony, finding "Husband has been paying support to Wife[ ] since the parties' separation" by way of depositing his post-separation income to the parties' joint bank accounts. ED Order at 33. The court found these deposits provided Wife "considerable sums of money," and thus that she "received almost [6] years of support in a [15-] year marriage." *Id.*

Wife filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement of issues to be raised on appeal. She presents four issues for our review:

1. Should the Trial Court have found that the monies deposited into the TD Joint account between February 27, 2013 and April 29, 2015 were a gift since [Husband] and [Wife] agreed on the record that the monies were a gift?

2. Should the Trial Court have found that the balance of the Capital

One account ending in 7706 was $171,461 as of the date of separation, as opposed to the $71,461 balance that was found, because [Husband] did not present any evidence that the funds deducted from the balance were used for marital expenses?

3. Should the Trial Court have found that a portion of the interest accrued on the Capital One accounts attributable to the marital estate considering that the marital balances were far in excess of the non-marital portion when accrued?

4. Should the Trial Court have found that [Wife] was entitled to Alimony considering the length of the marriage, the income of the parties, and the fact that [Wife] has primary custody of the minor children?

Wife's Brief at 10.

In her first issue, Wife avers the trial court erred in finding Husband's post-separation deposits, to the parties' joint TD Account, were not a gift to her. In support, Wife quotes at least eight statements by Husband's counsel, as well as several comments by the trial court, at the April 24, 2018, hearing, that the deposits were a "gift" to Wife. Wife's Brief at 17-23. Wife maintains: "[t]he parties agreed that the funds were a gift on the record," *id.* at 16; "[n]othing is more direct and convincing than an explicit agreement," *id.* at 24; and the court erred in disregarding this agreement.[7] *Id.* at 26. In the alternative — regardless of the parties' on-the-record agreement — Wife asserts she established the existence of a gift, as: (1) Husband's counsel's

_____

[7] In alleging the parties "agreed" that the deposits were a gift, Wife maintains, "Contracts between husband and wife, if fairly made, are generally considered binding as to them.[ ]" Wife's Brief at 28, *citing* **Bredt v. Bredt**, 326 A.2d 446, 448 (Pa. Super. 1974). To the extent Wife avers the attorneys' trial arguments constituted a contract binding the parties, in the absence of any further supporting discussion, we deny relief on such a basis.

statements at the April 18, 2018, hearing indicated his intent to give a gift; and (2) Husband's deposit of the money into the joint account, together with granting Wife "full access of the funds," evidenced delivery of the gift. *Id.* at 24-25, *citing **Ashley v. Ashley***, 393 A.2d 637, 639 (Pa. 1973) ("To establish a valid *inter vivos* gift, it is essential [to establish:] (1) an intention to make an immediate gift, and (2) such actual or constructive delivery to the donee as will divest the donor of dominion and control of the subject matter of the gift."). We disagree.

We note the relevant standard of review:

> We review a challenge to the trial court's equitable distribution scheme for an abuse of discretion. . . . We will not find an abuse of discretion "unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record." When reviewing an award of equitable distribution, "we measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights."
>
> . . . "We do not evaluate the propriety of the distribution order upon our agreement with the court's actions nor do we find a basis for reversal in the court's application of a single factor. Rather, we look at the distribution as a whole in light of the court's overall application of the 23 Pa.C.S.[ ] § 3502(a) factors for consideration in awarding equitable distribution. If we fail to find an abuse of discretion, the order must stand." Finally, "it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence."

**Hess v. Hess**, 212 A.3d 520, 523 (Pa. Super. 2019) (citations omitted).

> To establish a valid inter vivos gift, it is essential that the two elements of a gift be shown. These elements are (1) an intention

- 9 -

to make an immediate gift, and (2) such actual or constructive delivery to the donee as will divest the donor of dominion and control of the subject matter of the gift.

"Donative intent is the intention to make an 'immediate gift.'"

**Ashley**, 393 A.2d at 639 (citations omitted).

In its opinion, the trial court specifically addressed Wife's claim that "Husband admitted on the record that the funds were a gift:"

Wife advanced the position that [the post-separation] funds deposited by Husband were a gift to Wife. **She applied mostly manufactured and contradictory reasoning to support her position.** The Amended Final Equitable Distribution Order . . . fully disposes of this issue and cites relevant case law in support of its determination that these funds did not constitute a gift. **See** [ED Order at] 12-16.

However, on appeal, Wife attempts to circumvent this Court's holding by stating that Husband admitted that [the] funds were a gift to Wife. [This contention] is without merit. **Wife is mischaracterizing statements made by Husband's counsel.** This Court disagrees that Husband (or his counsel) admitted that the funds were a legal gift to Wife. This Court understood Husband's position, as stated by his counsel, to be the following: Husband admitted that he had voluntarily placed the post[-]separation funds into the jointly held bank account[ ]. Consequently, Husband's counsel conceded that Husband had no legal recourse, in the equitable distribution process, to reclaim those funds, or any portion thereof, from Wife. Because Husband had no legal recourse for reimbursement of any portion of those funds, he conceded that the funds were a "gift" but insisted that those funds were given to Wife in lieu of any support obligation. **See** N.T., 4/24/18[,] at 13-14. As stated by Husband's counsel:

. . . [Husband is not] seeking a dollar-for-dollar credit [in equitable distribution] . . . where [Husband's] gift to [Wife] will carry relevance down the road, will be when [Wife] asks for alimony . . . because we have 26 months from the date of separation until the date when [a support action was commenced.] Where [Husband] was supporting [wife] and the children far in excess of what

> his statutory obligation would have been and was under
> the statute [sic].

[*Id.*] at 15-16.

Trial Ct. Op. at 5-6 (emphases added and other emphases omitted).

On appeal, Wife fails to address this discussion by the trial court. Instead, Wife reiterates her insistence that Husband's counsel's statements — quoted out of the context specifically considered by the trial court — alone established Husband's intent to make a gift. Wife ignores Husband's testimony and argument at trial — credited by the trial court — that his intent was, instead, to provide informal spousal and child support, in order to prevent further complications in their lives. *See Ashley*, 393 A.2d at 639 (to establish a valid gift, party must establish "an intention to make an immediate gift"); *Hess*, 212 A.3d at 523 (this Court will not reverse trial court's credibility determinations so long as they are supported by the evidence); Trial Ct. Op. at 6; N.T., 5/14/18, at 70. In the absence of any discussion why the court should not have considered all of Husband's trial testimony and argument, we decline to disturb the court's conclusions. *See Hess*, 212 A.3d at 523.

In Wife's second issue, she challenges the marital value of the Capital One 7706 Account. We first consider the following factual and procedural history. While the parties agreed that as of the February 27, 2013, separation date, the 7706 Account contained $171,461, the trial court credited Husband's contention that "$100,000 was spent by the parties from that account" post-separation. ED Order at 36 n.36. The court thus set the value of this account,

as $71,461 and awarded this entire amount to Wife. *Id.* at 10, 27. With respect to the parties' other joint Capital One account, the 8295 Account, the court found the value, as of the date of separation, was $50,079,[8] and likewise awarded the entire amount to Wife. *Id.* According to Wife, all **post**-separation deposits to these accounts were made by the automatic monthly transfers from the TD Account. Wife's Brief at 30-31.

On appeal, Wife claims the trial court erred in finding the marital value of the 7706 Account was $71,461, where the account had $171,461 as of the date of separation "and the record does not support [the trial court's finding] that the funds were used for marital expenses." Wife's Brief at 29. Wife presents two assertions. First, she reiterates the parties "agreed" — and the trial court should have found — that all the post-separation deposits to the joint TD Account were a gift, and thus the transfers of TD Account funds to the 7706 Account were likewise a gift. *Id.* at 30-31. Second, Wife disputes, in the alternative, the trial court's finding that $100,000 from the 7706

_____

[8] We note a discrepancy, in the amended final equitable distribution order, regarding the value of the 8295 Account as of the date of separation. On page 10 of the order, the trial court stated the value of the 8295 Account was $50,079. ED Order at 10, 36 & n.37. In support, the court cited Wife's exhibit, "P-1," a spreadsheet of the parties' assets, and our review of the exhibit supports the $50,079 figure. *See* Wife's Reproduced Record at 380.

On page 27 of the equitable distribution order, however, the court stated the value of the account was $34,510.84. ED Order at 27. On appeal, Wife does not challenge the value of the 8295 Account, and indeed, her brief states the value of the account was $50,079. *See* Wife's Brief at 37. We reach no legal or factual conclusion as to the proper amount.

Account was used toward marital expenses. *Id.* at 35. Instead, Wife maintains, the $100,000 was transferred back to the TD Account in order to pay for Husband's work expenses that "were not immediately submitted for reimbursement." *Id.* at 32. She reasons: "There is no mathematical justification for treating funds that were deposited into the joint TD account and then later moved to the joint Capital One Accounts and then moved back in part to the Joint TD account, differently than the funds that were never moved from the [J]oint TD account." *Id.* at 34.

Incorporating our disposition of Wife's first issue, we conclude no relief is due. First, we have affirmed the trial court's finding that Husband's post-separation deposits to the TD Account were not a gift to Wife. Additionally, Wife conflates two distinct principles: (1) the marital, or **pre-**separation, portion of the account; and (2) **post-**separation, non-marital funds, which she avers were a gift. *See* 23 Pa.C.S. § 3501(a) (defining "marital property" as "property acquired by either party **during** the marriage and the increase in value of any nonmarital property acquired). Even if we were to proceed on the premise that the post-separation TD Account deposits were a gift, they would not be included in the marital estate. *See also* N.T., 4/24/18, at 13 (Wife abandoning her claim that the post-separation deposits were marital property).[9] Instead, we construe Wife's discussion as a claim that the trial

---

[9] We thus disagree with Wife's contention that "[t]he determination[,] of whether the funds deposited into the Joint TD account were a gift, directly impacts the finding of the Trial Court relative to the **marital** balance of the

court should have awarded her $100,000 as a post-separation gift. In this regard, we agree with Wife's reasoning the court should have treated in the same manner: (1) the initial post-separation deposits to the TD Account funds; and (2) TD Account funds transferred to the 7706 Account. **See** Wife's Brief at 34. In so doing, we conclude the court did not err in declining to award $100,000 to Wife as a post-separation gift. We likewise do not disturb the trial court's calculation of the marital value of the 7706 Account.

In Wife's third issue, she avers the trial court erred in not attributing any of the **post-separation** "interest accrued on the Capital One accounts to the marital estate." Wife's Brief at 36. Wife disputes the trial court's reasoning that it "was unable to determine a sum certain of interest earned on the marital portion," and asserts the total interest accrued, "from February 27, 2013 through 2015" was $5,061.63. **Id.** at 36-37. We further note Wife's discussion:

> [T]he Trial Court completely ignored the facts, finding that the existing marital balances of the accounts ($171,491 and $50,079) at date of separation earned no interest. As discussed above, the parties had in place an automatic monthly sweep of $4,500 and $1,000 from the Joint TD account to the two Capital One Accounts.[ ] If the deposits to the Joint TD account should have been considered a gift by the Trial Court, then this issue is disposed of, as all funds available in the Capital One Accounts, including accrued interest, would be subject to equitable distribution.

Wife's Brief at 37-38. No relief is due.

_____

parties' joint [7706 Account] for purposes of equitable distribution." **See** Wife's Brief at 29 (emphasis added).

Wife again conflates pre-separation, marital property with post-separation, non-marital assets. We again incorporate our discussion disposing of Wife's first issue, and decline to disturb the trial court's finding that interest on the post-separation deposits were not marital property. *See* Wife's Brief at 36 ("The Trial Court erred in failing to attribute any of the interest accrued . . . from February 27, 2013 through 2015 as marital . . . .").

In her final issue, Wife alleges the trial court erred in denying her request for alimony, "considering the length of the marriage, the income of the parties and the fact that [Wife] is the primary physical custodian of the minor children." Wife's Brief at 40. In her four-sentence discussion of this issue, Wife requests that "[s]hould this . . . Court reverse and remand this matter due to the Trial Court's error in not treating the funds deposited into the Joint TD account as a gift, then the issue of alimony should be reviewed." *Id.*

Because we affirm the trial court's finding that Husband's post-separation TD Accounts were not a gift, we decline to grant relief on Wife's alimony issue.

For the foregoing reasons, we affirm the November 29, 2019, amended final equitable distribution order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/3/2020